**UNITED STATES of America**

v.

**Alexander V. LOPEZ.**

**No. CR. 91–082L.**

United States District Court,
D. Rhode Island.

Nov. 24, 1997.

Zecharia Chaffee, Asst. U.S. Atty., U.S. Attorney's Office, Providence, RI, for Plaintiff.

Douglas Rose, Woonsocket, RI, for Defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This case raises a novel issue concerning the effect of § 7B1.2(a) of the United States Sentencing Guidelines ("U.S.S.G.") on the disposition of defendant Alexander V. Lopez's ("defendant") violation of supervised release. The case is before the Court on defendant's Objection to a U.S. Magistrate Judge's Report & Recommendation. Defendant argues that the violation should be dismissed or, in the alternative, that his sentence for the violation should be made retroactively concurrent with his state court sentence for the offense constituting the vi-

olation, or that his sentence for the violation should be suspended or reduced.

Specifically, defendant urges the Court to grant the requested relief because the United States Probation Office did not file its Petition for Warrant or Summons ("Petition") for defendant's violation of supervised release ౦ until approximately thirty-two months after he was convicted of the state offense which constituted the violation. Defendant argues that this delay violates U.S.S.G. § 7B1.2(a), as well as the Due Process Clause of the Fifth Amendment to the United States Constitution.

For the reasons that follow, defendant's objection is overruled and the Report and Recommendation is accepted and adopted.

I. Background

On May 22, 1992, a jury found defendant guilty of two counts of Possession of Cocaine with Intent to Distribute. On August 14, 1992, this Court sentenced him to federal prison for thirty-three months, to be followed by a term of supervised release of seventy-two months.[1] After serving his sentence, defendant was released from custody and commenced his term of supervised release on May 10, 1994.

On September 23, 1994, defendant pleaded nolo contendere in the Rhode Island Superior Court in Newport County to a charge of Assault with a Dangerous Weapon. On the same date, he was sentenced to a ten year term of incarceration, with three years to serve and seven years suspended, and he began serving that sentence immediately.

On June 16, 1997, defendant concluded his state term of imprisonment. One month prior to that, however, on May 16, 1997, the United States Probation Office filed its Petition with this Court, based on defendant's state offense. The Petition alleged a viola-

tion of the general condition of defendant's supervised release as follows:

> General Condition—While on supervised release, the defendant shall not commit another federal, state, or local crime. . . .

> Violation—On September 23, 1994, the defendant plead (sic) guilty to a state charge of Assault with a Dangerous Weapon and received a sentence of incarceration.

Defendant did not contest the violation, but argued before the Magistrate Judge that the Petition should be dismissed because it was filed some thirty-two months after the state convictions.[2] Defendant maintained that this delay violated U.S.S.G. § 7B1.2(a), which states, "The probation officer shall promptly report to the court any alleged Grade A or B violation."[3] Defendant contended that he was prejudiced by the thirty-two month delay, because it deprived him of the ability to argue to the federal court, at the time of the violation, that the sentence therefor should be concurrent with the state sentence on the underlying offense. Similarly, he asserted that he had been deprived of the ability to argue to the state court at the time of his plea and sentence that the state sentence should run concurrently with the federal sentence to be imposed for the violation, or be reduced or suspended in light of that anticipated federal sentence.

Defendant argued that his inability to make these arguments resulted in prejudice to him which necessitated dismissal of the Petition under the U.S.S.G., and under the Due Process Clause of the Fifth Amendment to the United States Constitution. Defendant argued further that the delay violated his right to a speedy trial under the Sixth Amendment to the United States Constitution. Finally, he contended that the delay

---

**1.** As further components of his sentence, defendant was ordered to participate in drug treatment, and to pay the following amounts: (1) the cost of supervision at the rate of $115.30 per month; (2) a $100.00 fine; and (3) a $50.00 special assessment.

**2.** The case was assigned to Magistrate Judge Robert W. Lovegreen pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for pro-

posed findings of fact with respect to the violation, and for a recommendation with respect to the disposition of the matter pursuant to 18 U.S.C. § 3583(e). A hearing was held pursuant to Fed.R.Crim.P. 32.1.

**3.** The state Assault with a Dangerous Weapon charge is a Grade A violation. See U.S.S.G. § 7B1.1(a)(1)(i).

violated Fed.R.Crim.P. 48(b).[4]

On July 9, 1997, after hearing, the Magistrate Judge in a Report and Recommendation concluded that defendant violated the terms and conditions of his supervised release (which was uncontested) and rejected all of defendant's contentions. He found them to be speculative and determined that "the mere loss of an opportunity to argue for and serve a concurrent sentence does not violate one's due process rights." The Magistrate Judge specifically found that Fed. R.Crim.P. 48(b) was inapplicable to the present situation.

The Magistrate Judge then recommended that defendant be sentenced to a term of twenty-one months incarceration, followed by fifty-one months of supervised release to be served consecutively to the state sentence. The Magistrate Judge further recommended that defendant be required to participate in a drug treatment program and pay the cost of supervision at the rate of $115.30 monthly.

On July 18, 1997, defendant filed an Objection to the Report and Recommendation, claiming that the Magistrate Judge neglected to adequately consider the proper consequences of the Probation Office's failure to comply with U.S.S.G. § 7B1.2(a). Defendant focused his argument on the due process issue, contending that the Magistrate Judge erred in not addressing the argument that the Probation Office's actions constituted a per se violation of his due process rights.

At the hearing on defendant's Objection to the Report and Recommendation, this Court invited the parties to address the issue of the meaning of the word "promptly" in § 7B1.2(a), as well as the consequences for noncompliance therewith.

On September 17, 1997, defendant submitted a memorandum arguing that the thirty-two month delay was not "prompt" within the meaning of § 7B1.2(a), but that the U.S.S.G.

and case law did not indicate what should result from a violation of § 7B1.2(a). He repeated his earlier allegations of prejudice arising from the delay, and contended that, in light of this prejudice, "[j]ustice, fundamental fairness, and a constitutional right to procedural due process" provided the basis for relief. He once again sought dismissal of the violation, but in the alternative, additionally requested that his sentence for the violation either be made retroactively concurrent with the state sentence or be reduced or suspended.

The Government responded that while the thirty-two month delay was not "prompt", and thus in violation of § 7B1.2(a), defendant should not be granted the requested relief. The Government argued that § 7B1.2(a) was not intended to benefit defendants; indeed, the Government contended, many defendants would prefer never to have their violations reported at all. Rather, the Government maintained, § 7B1.2(a) was meant "to insure that the courts which have supervision of sentenced defendants have firm control over those defendants." Thus, defendant could not cite this section to his avail.

In addition, the Government continued, defendant could not claim prejudice in the inability to argue for concurrent sentences, because U.S.S.G. § 7B1.3(f) sets forth the United States Sentencing Commission's clear policy that sentences imposed for violation of supervised relief be made to be served consecutively to any other sentence a defendant may be serving[5]. Moreover, the Government pointed out that there was no indication of what occurred at the state sentencing, i.e., whether defendant had actually made the argument he now claims he was unable to make as a result of the thirty-two month delay. The Government, thus, urged the Court to reject defendant's contentions, and to adopt the Report and Recommendation.

---

4. Fed.R.Crim.P. 48(b) states, "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

5. § 7B1.3(f) states:

Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

The Court having considered the parties' arguments, the matter is now in order for decision.

## II. Standard for Decision

This Court conducts a *de novo* review of the findings and recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b). The disposition of a violation of supervised release is governed by 18 U.S.C. §§ 3553(a), 3583(e)(3) and (h), and U.S.S.G. §§ 7B1.1(a)(1)(i), 7B1.3(a)(1) and (g)(2), 7B1.4 (a),and 7B1.5(b).

## III. Discussion

### A. U.S.S.G. § 7B1.2(a)

U.S.S.G. § 7B1.2(a), entitled "Reporting of Violations of Probation and Supervised Release (Policy Statement)", states, "The probation officer shall promptly report to the court any alleged Grade A or B violation." There is no question in this case that the Probation Office did not comply with this provision. In its memorandum, the Government concedes that the Probation Office, in filing its Petition thirty-two months after defendant's conviction in the state court, did not act "promptly." [6].

The question, then, is what should result from this failure to comply with § 7B1.2(a). The parties recognize that the guidelines themselves do not provide direction as to what relief should be granted in the case of a failure to "promptly" report an alleged violation, or indeed, whether any relief should be provided at all. Defendant argues that he has been prejudiced by the violation of § 7B1.2(a), and is thus entitled to the relief requested, as described *supra.* He further analogizes § 7B1.2(a) to the Speedy Trial Act, 18 U.S.C. §§ 3152–3156, 3161–3174, 28 U.S.C. § 604, which provides various remedies for violations of time limits within which a criminal defendant must receive a trial.

The Government counters that § 7B1.2(a) was not intended to benefit defendants but rather to ensure that federal courts would have the ability to monitor defendants on supervised release. The Government further maintains that U.S.S.G. § 7B1.3(f) defeats defendant's claim of prejudice because that section mandates a policy of consecutive rather than concurrent sentences.

■ While this case presents a novel issue, it is not a complicated one. The key dispositive factor in resolving this dispute is quite simply that the policy statements of Chapter 7 of the U.S.S.G. are not mandatory. *United States v. Mastello,* No. 96–2199, 1997 WL 413687, at *1 (1st Cir.1997) (per curiam); *United States v. O'Neil,* 11 F.3d 292, 301 n. 11 (1st Cir.1993). The United States Courts of Appeal for the First through Eleventh Circuits, as well as the D.C. Circuit, have so held. *See United States v. Schwegel,* 126 F.3d 551, 552 (3d Cir.1997); *Mastello,* 1997 WL 413687 at *1; *United States v. Waters,* 84 F.3d 86, 89–90 (2d Cir.) (per curiam) *cert. denied,*—— U.S.——, 117 S.Ct. 262, 136 L.Ed.2d 187 (1996); *United States v. Hurst,* 78 F.3d 482, 483–84 (10th Cir.1996); *United States v. Davis,* 53 F.3d 638, 640–41 (4th Cir.1995); *United States v. Hill,* 48 F.3d 228, 231–32 (7th Cir.1995); *United States v. Milano,* 32 F.3d 1499, 1503 (11th Cir.1994); *United States v. Mathena,* 23 F.3d 87, 93 (5th Cir.1994); *United States v. Sparks,* 19 F.3d 1099, 1101 (6th Cir.1994); *United States v. Forrester,* 19 F.3d 482, 484 (9th Cir.1994); *United States v. Levi,* 2 F.3d 842, 845 (8th Cir.1993); *United States v. Hooker,* 993 F.2d 898, 900–01 (D.C.Cir.1993).

A contrary result in this case is not dictated by the Supreme Court's decision in *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) to the effect that commentary to the U.S.S.G. that interprets or explains guidelines is authoritative unless violative of the Constitution or a federal statute, or inconsistent with a plain reading of the guidelines. Unlike commentary or policy statements that interpret or explain guidelines, the Chapter 7 policy statements are set forth separately, do not interpret or explain any particular guideline, and are expressly designated as advisory only. *See, e.g., Waters,* 84 F.3d at 89 n. 4; *Davis,* 53 F.3d at 640 n. 6; *O'Neil,* 11 F.3d at 301 n. 11.

---

**6.** The Government asserts that the delay was the result of an oversight in the Providence Probation office after transfer of the matter from the Newport branch office.

Thus, while federal courts are required to *consider* these policy statements, they are not required to *obey* them. *Id.*

Consequently, defendant cannot expect or claim relief for a violation of § 7B1.2(a), because that section creates no right to which relief may attach. Simply put, it would defy reason to find a right, vested in a defendant, to ensure compliance with a provision that need not be followed.[7]

Nor is the Court persuaded by defendant's efforts to analogize § 7B1.2(a) to the Speedy Trial Act, 18 U.S.C. §§ 3152–3156, 3161–3174, 28 U.S.C. § 604. Defendant points to the use, throughout 18 U.S.C. § 3161(j), of the word "promptly", and analogizes this section to § 7B1.2(a)[8]. Defendant then cites to 18 U.S.C. § 3162, which provides remedies for violations of the statutory prescriptions with respect to promptness, and argues that such remedies "may apply by analogy" to the instant situation[9].

The Court need not linger long over this argument. To begin with, unlike § 7B1.2(a), 18 U.S.C. § 3161 is mandatory, not merely advisory. This distinction is borne out by the presence, in 18 U.S.C. § 3162, of some-

thing notably absent from § 7B1.2(a): remedies for failure to obey the statutory command. The absence in the U.S.S.G. of such remedies merely confirms what is already clear: § 7B1.2(a) is not mandatory and does not confer a right upon defendants who commit violation offenses.

Moreover, defendant concedes that the sanction of dismissal does not apply to violations of § 3161(j), which is the only subsection in § 3161 containing the word "promptly". *United States v. Guzman*, 85 F.3d 823, 829 n. 4 (1st Cir.), *cert. denied,—— U.S.——, 117 S.Ct. 537, 136 L.Ed.2d 422 (1996). Thus, his attempted analogy to the Speedy Trial Act fails.

### B. Due Process

Defendant argues that even if § 7B1.2(a) does not expressly provide a remedy for a violation of its terms, "[j]ustice, fundamental fairness, and a constitutional right to procedural due process militate towards relief for Lopez, in the light of the egregious failure of the U.S. Probation Office to promptly report this violation." As detailed *supra*, he argues that the delay in reporting the violation de-

---

**7.** In the recent case of *United States v. McNickles*, 948 F.Supp. 345 (D.Del.1996), the court found that the probation officer did not comply with U.S.S.G. § 7B1.2(b), and dismissed a Grade C violation. In that case, the probation officer, upon learning of the violation, elected to continue supervision rather than report it. *Id.* at 349. One year later, however, upon learning of additional charges against the defendant, the probation officer reported the violation along with the new charges. *Id.* The court dismissed the Grade C violation, finding that "the decision by [the probation officer] to continue supervision of McNickles with the violation in place has addressed the unlawful conduct and any action the Court might take against McNickles for that conduct." *Id.*

*McNickles* does not support dismissal here. Firstly, §§ 7B1.2(a) and (b) differ sharply. More importantly, the court in *McNickles* based dismissal not on the violation of § 7B1.2(b), but rather on the exercise of its discretion, in light of its view that the probation officer's conduct, while not "prompt", sufficiently addressed the violation. *Id.* The Court specifically noted further that it did not base dismissal on due process grounds, since the defendant's ability to defend against the charge was not impaired. *Id.* at 349 n. 2. Thus, *McNickles* is inapposite to the present situation.

**8.** 18 U.S.C. § 3161(j) reads, in part:

(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

(3) Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.

**9.** 18 U.S.C. § 3162 mandates sanctions for violation of various subsections of § 3161, including dismissal; reduction of compensation of defense counsel; monetary fines; professional suspension of counsel; and professional admonishment of counsel.

nied him the opportunity to argue for concurrent sentences before the state and federal courts, and for probation or a suspended sentence before the state court. This, he argues, constitutes prejudice of such a magnitude as to result in a violation of his rights under the Due Process Clause of the Fifth Amendment.

While not expressly addressing the issue in due process terms, the Government's response appears to be that no real prejudice exists because U.S.S.G. § 7B1.3(f) expresses the Sentencing Commission's preference for consecutive sentences. Thus, because concurrent sentences are disfavored, defendant cannot claim to be prejudiced by the inability to argue for such a sentence. Moreover, the Government contends that it is unclear what occurred at defendant's state court sentencing; he may well have raised the issue of the federal violation and been denied a concurrent or more lenient sentence, or he may have failed to raise the issue at all. In any event, the Government urges that the Court not engage in speculation with respect to what might have occurred in the state court.

The Court first addresses defendant's claim that the Probation Office's delay violated his due process rights by denying him the ability to argue for a concurrent sentence before this Court. This Court is troubled by the Probation Office's delay in this case, but that oversight does not rise to the level of a constitutional violation. *See United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977) ("Judges are not free, in defining 'due process', to impose on law enforcement officials our 'personal and private notions' of fairness and to disregard the limits that bind judges in their judicial function.' " (*quoting Rochin v. California,* 342 U.S. 165, 170, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952))).

■ At the outset, it is clear that defendant, while on supervised release, enjoyed a liberty interest in his conditional freedom protected by the Due Process Clause. *Moody v. Daggett,* 429 U.S. 78, 85, 97 S.Ct. 274, 277, 50 L.Ed.2d 236 (1976). This liberty interest "may not be terminated absent ap-

propriate due process safeguards." *Id.* It is beyond dispute that a delay in executing a violation warrant, standing alone, does not violate a defendant's due process rights. *Id.* at 89, 97 S.Ct. at 279; *see also United States v. Throneburg,* 87 F.3d 851, 853 (6th Cir.), *cert denied,* —— U.S. ——, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996); *United States v. Tippens,* 39 F.3d 88, 90 (5th Cir.1994). Rather, the delay must result in prejudice to the defendant, such that it "undermines his ability to contest the issue of the violation or to proffer mitigating evidence." *Tippens,* 39 F.3d at 90.

■ No such prejudice exists in the present case. Defendant does not contest the actual violation itself. The asserted prejudice is simply the alleged inability to argue for concurrent sentences before this Court. That is clearly insufficient. *See, e.g., Moody,* 429 U.S. at 87, 97 S.Ct. at 278 (inability to serve state and federal sentences concurrently was insufficient prejudice where parole violator warrant was issued and lodged with institution of defendant's confinement, but not served upon him); *Throneburg,* 87 F.3d at 853 (same, where district court held revocation hearing nearly two years after issuance of supervised release violation warrant); *Tippens,* 39 F.3d at 90 (same, where there was delay of thirty months between issuance and execution of violator's warrant). Defendant "cites no authority for the proposition that a delay that may affect one's ability to serve sentences concurrently ... implicates due process...." *Throneburg,* 87 F.3d at 853.

Whether this Court would have given defendant a concurrent sentence shortly after his state sentence was imposed is entirely speculative. *See United States v. Lainez–Leiva,* 957 F.Supp. 390, 392–93 (N.D.N.Y.), *aff'd,* 129 F.3d 89, 1997 WL 691081 (2d Cir. 1997) (defendant's inability to serve concurrent sentence was insufficient prejudice to constitute Sixth Amendment violation because likelihood of concurrent sentence was highly speculative). In any event, as the Government notes, U.S.S.G. § 7B1.3(f) clearly discourages concurrent sentences.[10] Fi-

***

10. While this section, like § 7B1.2(a), is not man-

datory, this Court would have been obligated to

nally, this Court's present ability to grant a sentence retroactively concurrent with the state sentence knocks the final brick from the tenuous foundation of defendant's argument. *See Tippens,* 39 F.3d at 90 ("[T]he district court had the ability 'to grant, retroactively, the equivalent of concurrent sentences.'" (*quoting Moody v. Daggett,* 429 U.S. at 87, 97 S.Ct. at 278)). The delay did not prejudice defendant, and thus did not violate his due process rights.

Defendant's argument that the delay precluded him from arguing in state court for a concurrent sentence, or for a reduced or suspended sentence is simply disingenuous. Since he pleaded, waived a pre-sentence report, and was sentenced all on the same day, the violation Petition would not have issued, in the ordinary course of events until sometime later (probably within one month). Thus, a delay beyond that time could not have possibly prevented him from making any arguments he wanted before the state judge. Of course, he could not have argued to the state judge that his sentence be made concurrent to a federal sentence that did not exist. However, he could have asked the state judge to wait until the federal sentence was imposed before imposing the state sentence, or insisted on his right to have the judge consider a pre-sentence report,[11] and in that manner, delayed the state sentencing until after the violation Petition would normally be filed. It is obvious that defendant did neither, therefore, he cannot now claim prejudice from the Probation Office's delay in filing the Petition. Since there is no harm, there is no foul and no violation of due process here.

## IV. Disposition

The Court now turns to the question of the sentence to be imposed for defendant's violation of supervised release by the commission of a state crime. In the Report and Recommendation, the Magistrate Judge considered the applicable statutory and U.S.S.G. provisions [12] and recommended that defendant be committed to the custody of the Bureau of Prisons for an additional twenty-one months, to be followed by supervised release for fifty-one months. The Magistrate Judge further recommended that defendant be required to participate in a drug treatment program, and pay the cost of supervision at the rate of $115.30 monthly.

The Court is satisfied that the Magistrate Judge properly considered the statutory and U.S.S.G. provisions, and that his recommendation is reasonable and justified. The Court sees no reason to reject it. As noted *supra,* the Court, while not bound to obey U.S.S.G. § 7B1.2(a), must consider it in sentencing defendant. *See, e.g., Waters,* 84 F.3d at 89 n. 4; *Davis,* 53 F.3d at 640 n. 6; *O'Neil,* 11 F.3d at 301 n. 11. While the Court is concerned with the Probation Office's failure to comply with § 7B1.2(a), this in and of itself does not justify a departure from the Magistrate Judge's recommended disposition. The Probation Office's mistake, while regrettable, does not automatically translate to leniency for defendant. Defendant does not contest the violation itself, and offers no reason other than the delay for departing from the recommended disposition.

Moreover, the policy of § 7B1.3(f), favoring consecutive sentences, is applicable and appropriate in this case. Punishment for the state offense of Assault With A Dangerous Weapon serves a different purpose than punishment for the violation of federal supervised release.[13] In summary, there is no good reason why defendant should receive a retroactively concurrent sentence in this

---

consider it. *United States v. Hill,* 48 F.3d at 231–32.

**11.** Convicted felons in Rhode Island have a right to insist that the sentencing judge consider a presentence report or waive that right. R.I. Gen. Laws § 12–19–6; R.I.Super.Ct.R.Crim.P. 32(c); *State v. Sousa,* 116 R.I. 411, 358 A.2d 44, 45 (1976); *State v. Bradshaw,* 101 R.I. 233, 221 A.2d 815, 820 (1966).

**12.** *See* 18 U.S.C. §§ 3553(a), 3583(e)(3) and (h); U.S.S.G. §§ 7B1.1(a)(1)(i), 7B1.3(a)(1) and (g)(2), 7B1.4(a), 7B1.5(b).

**13.** *See Hill,* 48 F.3d at 232 ("[E]very separate violation of law deserves a separate sanction so that no violation shall go unsanctioned.... There would be no sanction for violating a condition of supervised release if, because a concurrent sentence had been imposed for the violation, the defendant served no additional time.")

case. Of course, defendant is entitled to credit for the time he has been in federal custody awaiting sentence for the violation he committed.

### V. Conclusion

For the foregoing reasons, the Report and Recommendation is accepted and adopted. Defendant hereby is sentenced to imprisonment with the Bureau of Prisons for an additional twenty-one months, to be followed by supervised release for fifty-one months. The Court further orders that defendant be required to participate in drug treatment, as prescribed by the Probation Office as a condition of supervised release, and also pay the cost of his supervision at the rate of $115.30 monthly. The Clerk will draft the judgment of conviction forthwith for the Court to execute.

It is so ordered.